# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| DAVID KENNEDY, | * |
| | * |
| Plaintiff, | *   CIVIL ACTION |
| v. | *   FILE NO. _____ |
| | * |
| DEPUTY KENNY WESTON, | * |
| | * |
| Defendant. | * |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff David Kennedy and hereby files this Complaint for Damages against Grady County Sheriff's Deputy Kenny Weston, showing the Court as follows:

## INTRODUCTION

1.

This is a 42 U.S.C. §1983 action brought under the Fourth Amendment to the United States Constitution arising from Deputy Weston's objectively unreasonable use of deadly force by shooting and seriously injuring David Kennedy as he was fleeing a traffic stop while not endangering the life of Weston or any other person. Plaintiff Kennedy has also asserted state law claims against Defendant Weston for battery, negligence, and violation of the Georgia Constitution, which are governed by legal standards and defenses that are materially different from those under federal law.

1

## REQUEST FOR STAY

2.

This suit is being filed at this time because the statute of limitations is about to expire, but because there are pending criminal charges against him arising from the subject incident, Plaintiff respectfully requests that this action be stayed until such charges are resolved.

## JURISDICTION AND VENUE

3.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, 42 U.S.C. §1201 *et seq,* 29 U.S.C. §794, and the Fourteenth Amendment of the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions.  Plaintiff further invokes the pendent or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. §1367.

4.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the event giving rise to this claim occurred in Grady County, Georgia, which is situated within the district and divisional boundaries of the Albany Division of the Middle District of Georgia, and because one or more parties reside within said district and division.

5.

All the parties herein are subject to the jurisdiction of this Court.

## PARTIES

6.

Plaintiff David Kennedy is a citizen of the State of Georgia who is competent to bring this suit to vindicate his rights under the United States Constitution and state law.

7.

Defendant Kenny Weston was, at all times relevant herein, a Grady County deputy sheriff who is subject to the jurisdiction of this Court and may be served with process personally at, or by request for waiver of service by First Class Mail sent to, the Grady County Sheriff's Office, 115 16th Avenue NE, Cairo, Georgia 39828.

8.

At all times relevant herein, Defendant Weston acted under color of state law, within the scope of his employment by the Grady County Sheriff's Office, and pursuant to the policies and procedures of the Grady County Sheriff.

## FACTUAL ALLEGATIONS

9.

At approximately 11:50 p.m. on September 28, 2020, Deputy Weston was traveling in his patrol car on Highway 93 in Grady County when Mr. Kennedy drove

past him from the opposite direction in his pickup truck.

10.

Weston recognized the truck, was familiar with Kennedy and his criminal history, and wondered why he was on the road so late at night.

11.

Because he suspected that Kennedy might be engaged in criminal activity, Weston decided to stop him.

12.

Weston made a U-turn in his patrol car, turned on his blue lights, and then caught up with Kennedy to initiate a traffic stop.

13.

Weston claims that the reason he stopped Kennedy was because his license tag light was out, but Plaintiff contends that this was merely a pretext for the following reasons:

    a)    The only way Weston could have known if Kennedy's tag light was working would be to take his eyes off the road and focus intently upon the review mirror to see if a pickup truck traveling at highway speed in the opposite direction happened to have a working tag light, and it is unlikely that Weston would have done so;

    b)    Even if Weston were in the habit of trying to view the license tag of

every vehicle driving past him in the opposite direction at highway speed, it would have been difficult if not impossible for Weston to tell if Kennedy's tag light was working by looking into his rearview mirror at a car traveling in the opposite direction on a dark highway in 55-mile-per-hour zone;

c) There is no indication from dashcam or bodycam video of officers who responded to the incident that the tag light was not working;

d) Weston never charged Kennedy for the tag light violation or any other traffic offense, for that matter; and

e) Kennedy believes that his tag light was in good working order.

14.

After Weston exited his patrol vehicle, Kennedy started to turn his truck around in an open area on the side of the road so that he could flee the scene while Weston was on foot and at a disadvantage in catching him.

15.

As Kennedy steered his truck away from Weston and back toward the highway, Weston began firing shots into Weston's pickup truck.

16.

It was a violation of clearly established Fourth Amendment law for Weston to shoot at a moving vehicle which was in no danger of running over him.

17.

Weston claims that he believed Kennedy was trying to run over him, but no reasonable officer would have believed that because Weston's bodycam video – which shows exactly what Weston saw from his vantage point – clearly shows that Kennedy was trying to drive past Weston and away from the scene, not toward him.

18.

Even after Weston says he no longer believed Kennedy was trying to run over him, he admits that he continued to fire shots at Kennedy after he passed Weston and was merely fleeing the scene, which is itself a violation of clearly established Fourth Amendment law.

19.

The bullets fired by Weston which actually struck Kennedy were fired from either the rear or side of the vehicle, indicating that Kennedy shot after he passed Weston, was driving away from him, and clearly posed no imminent lethal threat.

20.

Even if Kennedy had been driving toward Weston at the time he was shot – which is refuted by the video, physical damage to the vehicle, bullet trajectories, and Weston's own admission that he fired after he knew Kennedy was just fleeing – it is objectively unreasonable for a police officer to try to stop an approaching vehicle by shooting it.  Not only will the bullet not stop the car, but shooting the driver will cause

him to lose control of the car so that what was perceived to be a guided missile would now become an unguided missile which would continue moving forward and perhaps posing a greater hazard than when the driver was in control.

21.

In any event, if an officer has time to draw his firearm, assume a shooter's stance, aim, and pull the trigger, he also has time to get out of the way, which is why most police departments have historically prohibited officers from shooting at a moving vehicle unless an occupant of the vehicle is using or threatening to use deadly force by some means other than the vehicle itself.

22.

No reasonable police officer in the year 2020 would have believed that it was reasonable for Deputy Weston to shoot Mr. Kennedy for the sole purpose of preventing his escape when he posed no lethal threat.

**THEORIES OF RECOVERY**

**COUNT I – FOURTH AMENDMENT CLAIM AGAINST DEFENDANT WESTON IN HIS INDIVIDUAL CAPACITY**

23.

The aforementioned misconduct of Defendant Weston in using deadly force against David Kennedy under circumstances where it was objectively unreasonable to do so was an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution.

24.

In September 2020, a reasonable law enforcement officer would have known that it was unconstitutional to use deadly force against a motorist fleeing a traffic stop whether the fleeing motorist poses no imminent threat to anyone in the immediate path of the vehicle.

25.

The aforementioned conduct of Defendant Weston for initiating the traffic stop in the first place, without either arguable probable cause or reasonably articulable suspicion, was also an unreasonable seizure under the Fourth Amendment. A jury could find that the unlawful stop itself was the proximate cause of the shooting of Kennedy by Weston, even assuming arguendo that the shooting was independently justifiable. *See, e.g., Jackson v. Sauls,* 206 F.3d 1156, 1167-69 (11th Cir. 2000).

26.

In September 2020, a reasonable law enforcement officer would have known that it was unconstitutional to make a pretextual traffic stop without arguable probable cause or reasonable articulable suspicion.

27.

The law being clearly established in September 2020 that Defendant Weston's conduct was objectively unreasonable under the Fourth Amendment, Weston is liable in his individual capacity under 42 U.S.C. §1983 for all damages proximately caused

by his violation of Plaintiff Kennedy's Fourth Amendment rights.

## COUNT II – STATE LAW CLAIMS AGAINST DEFENDANT WESTON IN HIS INDIVIDUAL CAPACITY

28.

By using excessive force against Plaintiff's decedent, Defendant Weston not only violated the Fourth Amendment but also its equivalent provision under the Georgia Constitution, Art. 1, §1, ¶13.  However, any qualified immunity defense asserted by Weston under the Fourth Amendment would not apply under state law, and Georgia's doctrinally distinct defense of official immunity does not require that the law be clearly established to impose liability for a violation.

29.

Defendant Weston's use of excessive force against Plaintiff's decedent also amounted to abuse of a person being arrested or taken into custody in violation of the Georgia Constitution, Art. 1, §1, ¶17.  There is no corresponding provision under the federal Constitution.

30.

By using more force than was reasonably necessary for the defense of life under Georgia's self-defense statute (O.C.G.A. §16-3-21), Defendant Weston committed a battery as well as breach of a duty imposed by law that constitutes negligence under Title 51 of the Official Code of Georgia Annotated.

31.

The determination of reasonableness under O.C.G.A. §16-3-21 is different than under the Fourth Amendment because that statute requires that the force not only be reasonable, but that it be "necessary" for the defense of human life. While the doctrine of qualified immunity limits Fourth Amendment liability to situations where a reasonable officer would have known that the use of deadly force was a violation of clearly established legal precedent – irrespective of whether there were less extreme alternatives – Georgia law would impose liability where there were other available options and thus deadly force was not necessary. The availability and feasibility of alternatives to deadly force is a question of fact that must be decided by a jury under Georgia law, while Fourth Amendment claims do not make it to a jury unless the court first decides that the law was clearly established.

32.

Unlike qualified immunity under federal law, which is based on whether the law was clearly established, the individual immunity available to law enforcement officers under Georgia law – known as official immunity – only applies in two instances: (1) where the officer's conduct violates a ministerial duty (which does not apply here because use of force is discretionary), or (2) where the officer acts with actual malice, even in the performance of discretionary duties. Actual malice is defined as acting with specific intent to cause harm or commit a wrongful act.

33.

Because Defendant Weston intentionally used deadly force when he knew that deadly force was unjustified, he was acting with specific intent to do wrong and to cause an injury, which raises an inference of actual malice for which he is not entitled to official immunity under Georgia law.  *Kidd v. Coates*, 271 Ga. 33, 34, 518 S.E. 2d 124, 125 (1999); *Gardner v. Rogers*, 224 Ga. App. 165, 169, 480 S.E.2d 217 (1996).

34.

In addition to being liable for federal constitutional violations, Defendant Weston is liable to Plaintiffs under Georgia law for all damages proximately caused by his tortious and unconstitutional misconduct.  *See Porter v. Massarelli*, 303 Ga. App. 91, 692 S.E.2d 722 (2010).

**DAMAGES**

35.

As a direct and proximate result of the above-described conduct of Defendant, Plaintiff David Kennedy was deprived of his constitutional rights and Defendant is liable for all general damages proximately flowing from said deprivation of his rights, including but not limited to his pain and suffering, including mental anguish and emotional distress, both past and future, as well as special damages for past and future medical expenses and past and future lost wages incurred as a direct consequence of the unconstitutional and tortious conduct of Defendant.

36.

Defendants are liable to Plaintiffs for all the foregoing injuries and damages in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

37.

Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation on their federal claims pursuant to 28 U.S.C. §1988 and on his state law claims for intentional misconduct under O.C.G.A. §13-6-11.

38.

To the extent that Defendant willfully, wantonly, or with deliberate indifference to the rights of David Kennedy, Plaintiff is also entitled to recover punitive damages under both federal and state law in an amount to be determined by the enlightened conscience of fair and impartial jurors.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against Defendant in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

d) That all costs of this action be taxed against Defendant; and

e) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

A JURY TRIAL IS DEMANDED.

Respectfully submitted this 23rd day of September, 2022.

*/s/ Craig T. Jones*
_____
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiff

CRAIG T. JONES, PC
Post Office Box 129
Washington, GA 30673
(678) 643-0062
craigthomasjones@outlook.com